MONA Z. HANNA, ESQ.  (SBN 131439)
mhanna@mrllp.com
JENNIFER A. MAURI, ESQ. (SBN 276522)
jmauri@mrllp.com
ALLISON C. AGUIRRE, ESQ. (SBN 312544)
aaguirre@mrllp.com
**MICHELMAN & ROBINSON, LLP**
17901 Von Karman Ave., Ste. 1000
Irvine, CA 92614
Telephone:  (714) 557-7990
Facsimile: (714) 557-7991

Attorneys for Plaintiff
*RESCUE 1 FINANCIAL, LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| RESCUE 1 FINANCIAL, LLC, a California limited liability company<br><br>        Plaintiff,<br><br>   vs.<br><br>COMPLETE DEBT RELIEF, LLC, a California limited liability company, MICHAEL EEG, an individual, CORY GIPSON, an individual, and Does 1-10 inclusive<br><br>        Defendant. | Case No.:  8:23-cv-00982<br><br>**COMPLAINT FOR:**<br><br>(1) **VIOLATION OF THE DEFEND TRADE SECRETS ACT;**<br>(2) **BREACH OF CONTRACT;**<br>(3) **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>(4) **BREACH OF DUTY OF LOYALTY;**<br>(5) **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS;**<br>(6) **NEGLIGENT INTERFERENCE WITH CONTRACTUAL RELATIONS;**<br>(7) **INTENTIONAL INTERFERENCE WITH** |

PROSPECTIVE ECONOMIC
ADVANTAGE;
(8)    NEGLIGENT INTERFERENCE
WITH PROSPECTIVE
ECONOMIC ADVANTAGE;
(9)    UNJUST ENRICHMENT;
(10)   UNFAIR BUSINESS
PRACTICES (CAL. BUS. &
PROF. CODE § 17200, *ET SEQ.*)

**DEMAND FOR JURY TRIAL**

Plaintiff RESCUE 1 FINANCIAL, LLC ("Rescue 1") by and through its attorneys, alleges against Defendants COMPLETE DEBT RELIEF, LLC ("Complete Debt Relief"), MICHAEL EEG ("Eeg"), and CORY GIPSON ("Gipson") (collectively, "Defendants"), as follows:

## PRELIMINARY STATEMENT

1.     This is a lawsuit by Rescue 1 against Defendants for 1) Violations of The Defend Trade Secrets Act of 2006 ("DTSA"), 18 U.S.C. § 1836, *et seq.*; 2) Breach of Contract; 3) Breach of Implied Covenant of Good Faith and Fair Dealing; 4) Breach of the Duty of Loyalty; 5) Intentional Interference With Contractual Relations; 6) Negligent Interference with Contractual Relations; 7) Intentional Interference With Prospective Economic Advantage; 8) Negligent Interference With Prospective Economic Advantage; 9) Unjust Enrichment; and 10) Violations of the California Business and Professions Code, Cal. Bus & Prof. Code § 17200, *et seq.* ("Unfair Business Practices").

2.     These claims arise out of Defendants' plan while they were employed as high-level managers working for Rescue 1 to misappropriate and use non-public, confidential, and trade secret information to start their own new, competing debt relief business, including information about practically every aspect of Rescue 1's confidential business processes and methods. Rescue 1 is informed and believes that Defendant Eeg has been secretly planning Complete Debt Relief since early 2023 while employed with Rescue 1, using company time, equipment, and resources as part of his efforts to misappropriate Rescue 1's confidential information and trade secrets. Further, in violation of their Employment Agreements, Defendants Eeg and Gipson used Rescue 1's trade secrets to identify and then contact Rescue 1's top performing employees—the identification and contact information of which Defendants would not have known but for their access to Rescue 1's trade secrets.

3.     On or about the week of May 29, 2023, senior management of Rescue 1 first learned about Defendants' plan to compete with Rescue 1. Rescue 1 immediately shut off Gipson's access to Rescue 1's confidential information and trade secrets (Eeg's was shut off upon his resignation in April 2023). Unfortunately, Defendants have already appropriated

Rescue 1's confidential information and trade secrets for their own use and to the detriment of Rescue 1. At no time did Rescue 1 authorize or consent to Defendants' use of Rescue 1's non-public, confidential information and trade secrets to the detriment of Rescue 1. Rescue 1's investigation into Defendants' wrongdoing is continuing.

4.    As a result of Defendants' misconduct to date, and if Defendants are not enjoined from further illegal conduct, Rescue 1 has suffered and will continue to suffer irreparable harm. Accordingly, Rescue 1 brings this action against Defendants for injunctive and other necessary and appropriate relief.

## **PARTIES**

5.    Plaintiff Rescue 1 is and was at all relevant times mentioned herein, a limited liability company formed under the laws of the State of California, with its principal place of business in the County of Orange, State of California.

6.    Defendant Complete Debt Relief is and was at all relevant times mentioned herein, a limited liability company formed under the laws of the State of California, with its principal place of business in the County of Orange, State of California.

7.    Defendant Eeg is and was at all relevant times mentioned herein, an individual who resides in the County of Orange, State of California. Defendant Eeg is a former manager of Rescue 1.

8.    Defendant Gipson is and was at all relevant times mentioned herein, an individual who resides in the County of Riverside, State of California. Defendant Eeg is a former manager of Rescue 1.

9.    Rescue 1 is ignorant of the true names and capacities of the defendants sued as Does 1 through 10, inclusive, and therefore sues these Doe defendants by such fictitious names. Rescue 1 will amend this complaint to allege their true names and capacities when ascertained. Rescue 1 is informed and believe, and thereon allege, that each of the Defendants are, and at all times relevant herein was, an agent, alter ego, employee, partner and/or joint venturer of each of the other cross-defendants, acting within the course and scope of such agency, employment, partnership or joint venture.

**JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), as this action arises under the laws of the United States.

11. This Complaint arises out of Defendants' violation of Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b).

12. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Rescue 1's pendent California state law claims for Breach of Contract, Breach of the Duty of Loyalty, Violations of the California Business and Professions Code, Cal. Bus & Prof. Code § 17200, *et seq.,* Intentional Interference With Contractual Relations, Intentional Interference With Prospective Advantage, and Breach Of Implied Covenant Of Good Faith and Fair Dealing.

13. This Court has personal jurisdiction over Defendants, and venue is appropriate, as Defendants reside in the Central District of California, and/or because a substantial part of the events giving rise to this action occurred in the Central District of California.

**FACTUAL ALLEGATIONS**

**Rescue 1 Financial, LLC**

14. Rescue 1 is a full-service financial entity and licensed finance lender that provides debt relief services, including debt consolidation loans, credit counseling, debt settlement, cash-out refinancing, and bankruptcy services. Rescue 1 services clients across the United States, assisting with unsecured debt and advising regarding debt management. In particular, Rescue 1 engages in direct marketing and advertising to consumers in numerous states. Rescue 1 employees routinely work with customers in other states.

15. Founded in 2010, Rescue 1 has grown to be one of the top debt relief services providers in the United States. It is an Accredited Business with the Better Business Bureau with an A+ rating, was named as an official member of the Forbes Finance Council in 2021, and was named as one of the fast-growing financial services companies in America in 2019 by Inc.

16.    Through its vendors, Rescue 1 has developed relationships with a large majority of creditors, including American Express, Bank of America, Best Egg, Capital One, Citibank, Discover, Lending Club, One Main Financial, Prosper, Synchrony, USAA, and Wells Fargo. Further, as a member of the American Fair Credit Council, Rescue One has been highly successful in steadily growing its consumer base.

17.    Rescue 1 currently employs over 110 individuals in a variety of roles, with a majority of its employes working as sales representatives that work directly with Rescue 1's customers and potential customers.

18.    Prior to and until Defendant Eeg's resignation, Rescue 1's sales workforce was organized with three managers overseeing all sales representatives.  Those managers then reported directly to Rescue 1's Chief Operating Officer.  Because of their high positions in the management of Rescue 1, the managers were provided complete access to nearly all of Rescue 1's business information, including confidential information of both the business and Rescue 1's employees. Following Defendant Eeg's resignation, Rescue 1 restructured to operate with two managers.

19.    One of the main ways in which Rescue 1 conducts its business is through the use of marketing and advertising to potential consumers.  Among other methods, Rescue 1 purchases data from certain sources, analyzes that data through confidential, proprietary filters, to identify the best potential leads, and then conducts direct marketing and advertising to those leads.  The business methods and processes underlying each of these steps are confidential and have independent economic value.  For example, the identification of the best source for potential lead data and the method by which that data is then filtered to identify the best potential leads is a confidential business process that Rescue 1 had developed after extensive investment and effort.

20.    Once a lead indicates interest in Rescue 1's services, Rescue 1's sales representatives work with that lead to provide them with the appropriate financial services. Rescue 1 sales representatives are trained on and utilize Rescue 1's confidential business processes, methods, and forms to convert the lead to a customer, and then to provide that

customer with Rescue 1's services. Rescue 1 provides sales agents with scripts, manuals, and other training related materials crafted and continuously developed by Rescue 1, to carry out their performance.

21.    In addition to the methods by which Rescue 1 interacts with consumers, Rescue 1 has also developed methods of assessing the performance of its sales representatives, including the identification of the key performance metrics that indicate the best performance as it related to Rescue 1's business objectives.

22.    In connection with its business and as the result of thirteen years of investment and efforts, Rescue 1 has developed highly sensitive and propriety information belonging to Rescue 1 regarding its business operations and marketing strategies. Such confidential trade secrets include, but are not limited to: (1) information about products and services, markets, customers and prospective customers; (2) the personal and financial information of customers, vendors and suppliers; (3) pricing data; (4) software data; (5) financial and accounting data; (6) personnel and compensation data; (7) data processing and communications; (8) technical data; (9) marketing strategies; (10) research and development of new or improved products and services; (11) know-how regarding the business of Rescue 1, its affiliates and its customers or its respective products and services, including business processes, methods and forms (and negative know-how, which refers to lengthy and expensive research proving which processes did not work); (12) employee training manuals; (13) sales agent scripts; (14) lead policies; (15) employment agreements; (16) commission schedules; (17) call queue management; (18) marketing creatives; (19) Rescue 1 employee contact lists; (20) drafts of digital assets; and (21) information about Rescue 1 employees, including information about their compensation, specialized expertise, key performance metrics, contact information, and other similar highly confidential information (hereinafter, the "Confidential Trade Secret Information").

23.    Rescue 1 takes the confidentiality of its Confidential Trade Secret Information seriously.  Rescue 1 limits access to its Confidential Trade Secret Information to authorized employees only. Rescue 1 does this by requiring the entry of an appropriate username and

password prior to accessing the information. Further, Rescue 1 issues its employees password-protected computers for work-related purposes, and does not permit employees to access the Confidential Trade Secret Information other than through a Rescue 1 issued computer. Rescue 1 employees are not able to access Rescue 1's database without log-in credentials that are uniquely assigned to each employee. Upon any employee's termination or resignation, the employee's access to Rescue 1's database and associated accounts is taken away.

24.    In addition, Rescue 1 employees execute Employee Agreements wherein every employee agrees to maintain the confidentiality of and agrees not to disclose the Confidential Trade Secret Information.

25.    In the course of their employment, and only after the execution of the confidentiality and non-disclosure provisions in the Employment Agreement, employees are also provided with hard copies of documents containing Confidential Trade Secret Information, including training manuals, sales scripts, and forms.

26.    Rescue 1 has invested years and substantial resources in developing this Confidential Trade Secret Information, including its business materials and operating procedures. Such Confidential Trade Secret Information would be highly valuable to a competitor because, among other reasons, it would allow a competitor to significantly shorten the sales cycle and provide a greater likelihood of success in obtaining sales.

### Defendant Michael Eeg

27.    Defendant Eeg was employed by Rescue 1 from October 29, 2012 to April 4, 2023. At all relevant times to Rescue 1's claims in this action, Defendant Eeg worked for Rescue 1 as one of the three managers who managed sales agents.

28.    As a manager, Defendant Eeg was responsible for managing, training, and overseeing Rescue 1 sales agents. Specifically, Defendant Eeg's duties involved leading, managing, and motivating agents to increase close rates and client retention; assisting in presenting company products and services to clients; implementing new sales techniques and strategies; monitoring the lead management system; compiling sales progress reports,

showing sales representatives productions, close rates, and call statistics; participating in new hire training, on-the-job training, and team meetings; assisting with specialized training classes; and performing daily live call monitoring.

29.    In his role, Defendant Eeg had access to Rescue 1's Confidential Trade Secret Information, especially marketing strategies; research and development of new or improved products and services; know-how regarding the business of Rescue 1, its affiliates and its customers or its respective products and services, including business processes, methods and forms; employee training manuals; sales agent scripts; lead policies (and negative know-how); employment agreements; commission schedules; call queue management; marketing creatives; Rescue 1 employee contact lists; drafts of digital assets; and information about Rescue 1 employees, including information about their compensation, specialized expertise, key performance metrics, contact information, and other similar highly confidential information. In his role, Defendant Eeg was involved in strategic decisions regarding various aspects of the business of Rescue 1.

30.    During his employment, Defendant Eeg had a company-issued password-protected computer for work-related purposes, which contained, among other things, Confidential Trade Secret Information to conduct their work duties. He also received hard copies of Rescue 1's Confidential Trade Secret Information, including training manuals, sales scripts, and forms.

31.    Defendant Eeg executed multiple employment agreements with Rescue 1. On or about January 13, 2021, Defendant Eeg entered into the most recent Employee Confidentiality, Non-Disclosure, and Non-Recruiting Agreement with Rescue 1, which is attached hereto as **Exhibit A** and incorporated herein by reference. Under the terms of this Agreement, Defendant Eeg agreed:

a.    To "devote his/her best efforts to the business of Employer, to perform conscientiously all duties and obligations required or assigned, and not to usurp, for personal gain, any opportunities in Employer's line of business" (i.e., called the "Duty of Loyalty"). (Exh. A ¶ 1).

7
**COMPLAINT**

b.  That he acknowledges that his employment with [Rescue 1] creates a relationship of confidence and trust with [Rescue 1] with respect to all of [Rescue 1's] Trade Secrets and Confidential Information. Therefore, at any time during [his] term of employment or following the termination of [his] employment with [Rescue 1], whether voluntary or involuntary, Employee shall not, except as required in the conduct of [Rescue 1's] business or as authorized in writing by [Rescue 1], use, publish or disclose any of [Rescue 1's] Trade Secrets and/or Confidential Information in any manner whatsoever." [*Id.*, ¶2 (E)].

c.  That he "acknowledges and agrees that all Trade Secrets and Confidential Information developed, created or maintained by [him], alone or with others, while he/she is employed by [Rescue 1], shall remain at all times the sole property of [Rescue 1]." [*Id.*, ¶ 2(D)].

d.  That he "acknowledges and agrees that [Rescue 1] has invested substantial time and effort in assembling its present personnel," and that he "agrees that for one (1) year following his/her termination of employment with [Rescue 1], whether voluntary or involuntary, [he] will not directly or indirectly recruit, or attempt to recruit, any Employee of [Rescue 1], or induce or attempt to induce any Employee of [Rescue 1], to terminate or cease employment with [Rescue 1]." [*Id.*, ¶ 3].

e.  That upon his termination, he agrees to "[i]nform [Rescue 1] of and deliver to [Rescue 1] all records, files, electronic data, documents, plans, reports, books, notebooks, notes, memoranda, correspondence, contracts and the like in [his] possession, custody or control that contain any of [Rescue 1] Trade Secrets or Confidential Information which [he] prepared, used, or came in contact with while employed by [Rescue 1]." [*Id.*, ¶ 7(A)].

f.  That upon his termination, he agrees to "[i]nform [Rescue 1] of and deliver to [Rescue 1] all records, files, electronic data, documents, plans, reports,

8

**COMPLAINT**

books, notebooks, notes, memoranda, correspondence, contracts and the like in [his] possession, custody or control that pertain in any way to the business of [Rescue 1] and which [he] prepared, used, or came in contact with while employed by [Rescue 1]." [*Id.*, ¶ 7(B)].

g.    That upon his termination, he agrees to "[d]eliver to [Rescue 1] all tangible property in [his] possession, custody or control belonging to [Rescue 1], including, but not limited to, key cards, office keys, cell phone, pagers, personal digital assistants, external hard drives, thumb drives, zip drives, lap top computers and desk top computers." [*Id.*, ¶ 7(C)].

h.    That he acknowledges and agrees that "if [Rescue 1's] Trade Secrets and/or Confidential Information were disclosed to a competing business or used in an unauthorized manner as provided herein, such unauthorized disclosure or use would cause immediate and irreparable harm to [Rescue 1] and would give a competing business an unfair business advantage against [Rescue 1] for which [Rescue 1] may not have an adequate remedy at law. As such, [he] agrees that [Rescue 1] shall be entitled to any proper injunction, including but not limited to temporary, preliminary, final injunctions, temporary restraining orders, and temporary protective orders [. . .]" [*Id.*, ¶ 8].

**Defendant Cory Gipson**

32.    Defendant Gipson was employed by Rescue 1 from August 19, 2013 to June 5, 2023. Prior to Defendant Eeg's resignation, Defendant Gipson worked for Rescue 1 as the second of three managers who managed sales agents alongside Defendant Eeg.  Following Defenant Eeg's departure, Defendant Gipson was recently promoted to director.

33.    As a manager, Defendant Gipson was responsible for managing, training, and overseeing Rescue 1 sales agents. Specifically, Defendant Gipson's duties involved leading, managing, and motivating agents to increase close rates and client retention; assisting in presenting company products and services to clients; implementing new sales techniques and

strategies; monitoring the lead management system; compiling sales progress reports showing sales representatives productions, close rates, and call statistics; participating in new hire training, on-the-job training, and team meetings; assisting with specialized training classes; and performing daily live call monitoring.

34.     In his role, Defendant Gipson had access to Rescue 1's Confidential Trade Secret Information, especially marketing strategies; research and development of new or improved products and services; know-how regarding the business of Rescue 1, its affiliates and its customers or its respective products and services, including business processes, methods and forms; employee training manuals; sales agent scripts; lead policies (and negative know-how); employment agreements; commission schedules; call queue management; marketing creatives; Rescue 1 employee contact lists; drafts of digital assets; and information about Rescue 1 employees, including information about their compensation, specialized expertise, key performance metrics, contact information, and other similar highly confidential information. In his role, Defendant Gipson was involved in strategic decisions regarding various aspects of the business of Rescue 1.

35.     During his employment, Defendant Gipson had a company-issued password-protected computer for work-related purposes, which contained, among other things, Confidential Trade Secret Information to conduct their work duties. He also received hard copies of Rescue 1's Confidential Trade Secret Information, including training manuals, sales scripts, and forms.

36.     Defendant Gipson executed multiple employment agreements with Rescue 1. On or about January 14, 2021, Defendant Gipson entered into the most recent Employee Confidentiality, Non-Disclosure, and Non-Recruiting Agreement with Rescue 1, which is attached hereto as **Exhibit B** and incorporated herein by reference. Under the terms of this Agreement, Defendant Gipson agreed:

a.     To "devote his/her best efforts to the business of Employer, to perform conscientiously all duties and obligations required or assigned, and not to usurp, for personal gain, any opportunities in Employer's line of business"

1    (i.e., called the "Duty of Loyalty"). [Exh. B, ¶1].

2    b.    That he acknowledges agrees that his employment with [Rescue 1] creates

3          a relationship of confidence and trust with [Rescue 1] with respect to all of

4          [Rescue 1's] Trade Secrets and Confidential Information. Therefore, at any

5          time during [his] term of employment or following the termination of [his]

6          employment with [Rescue 1], whether voluntary or involuntary, Employee

7          shall not, except as required in the conduct of [Rescue 1's]  business or as

8          authorized in writing by [Rescue 1], use, publish or disclose any of [Rescue

9          1's] Trade Secrets and/or Confidential Information in any manner

10         whatsoever." [*Id.*, ¶2 (E)].

11   c.    That he "acknowledges and agrees that all Trade Secrets and Confidential

12         Information developed, created or maintained by [him], alone or with

13         others, while he/she is employed by [Rescue 1], shall remain at all times

14         the sole property of [Rescue 1]." [*Id.*, ¶ 2(D)].

15   d.    That he "acknowledges and agrees that [Rescue 1] has invested substantial

16         time and effort in assembling its present personnel," and that he "agrees

17         that for one (1) year following his/her termination of employment with

18         [Rescue 1], whether voluntary or involuntary, [he] will not directly or

19         indirectly recruit, or attempt to recruit, any Employee of [Rescue 1], or

20         induce or attempt to induce any Employee of [Rescue 1], to terminate or

21         cease employment with [Rescue 1]." [*Id.*, ¶ 3].

22   e.    That upon his termination, he agrees to "[i]nform [Rescue 1] of and deliver

23         to [Rescue 1] all records, files, electronic data, documents, plans, reports,

24         books, notebooks, notes, memoranda, correspondence, contracts and the

25         like in [his] possession, custody or control that contain any of [Rescue 1]

26         Trade Secrets or Confidential Information which [he] prepared, used, or

27         came in contact with while employed by [Rescue 1]." [*Id.*, ¶ 7(A)].

28   f.    That upon his termination, he agrees to "[i]nform [Rescue 1] of and deliver

11
**COMPLAINT**

to [Rescue 1] all records, files, electronic data, documents, plans, reports, books, notebooks, notes, memoranda, correspondence, contracts and the like in [his] possession, custody or control that pertain in any way to the business of [Rescue 1] and which [he] prepared, used, or came in contact with while employed by [Rescue 1]." [*Id.*, ¶ 7(B)].

g.   That upon his termination, he agrees to "[d]eliver to [Rescue 1] all tangible property in [his] possession, custody or control belonging to [Rescue 1], including, but not limited to, key cards, office keys, cell phone, pagers, personal digital assistants, external hard drives, thumb drives, zip drives, lap top computers and desk top computers." [*Id.*, ¶ 7(C)].

h.   That he acknowledges and agrees that "if [Rescue 1's] Trade Secrets and/or Confidential Information were disclosed to a competing business or used in an unauthorized manner as provided herein, such unauthorized disclosure or use would cause immediate and irreparable harm to [Rescue 1] and would give a competing business an unfair business advantage against [Rescue 1] for which [Rescue 1] may not have an adequate remedy at law. As such, [he] agrees that [Rescue 1] shall be entitled to any proper injunction, including but not limited to temporary, preliminary, final injunctions, temporary restraining orders, and temporary protective orders [. . .]" [*Id.*, ¶ 8].

### Complete Debt Relief, LLC

37.   On or about February 10, 2023, while still purporting to act as a manager of Rescue 1, Defendant Eeg formed Complete Debt Relief in the State of California. On information and belief, Defendant Eeg is the Chief Executive Officer of Complete Debt Relief.

38.   On or about February 10, 2023, Complete Debt Relief registered with the California Secretary of State to do business in California.

39.   Despite its registration *less than 4 months ago*, Complete Debt Relief

advertises itself as a debt relief financial services company whose team "has over 10 years experience in the debt relief and financial services industry." (https://completedebtrelief.com/about-us/). Complete Debt Relief advertises that it provides debt relief services, including debt consolidation, credit counseling, debt settlement, and bankruptcy services. It further advertises that it has "thousands of clients enrolled", "$ millions in client debt paid off", and that it is an "Accredited Business" with the Better Business Bureau with an "A+" rating. (https://completedebtrelief.com/)

40.    Upon information and belief, Complete Debt Relief plans to start conducting business on June 5, 2023.

## **Misappropriation of Rescue 1's Trade Secrets**

41.    On or around the week of May 29, 2023, Rescue 1's employees began reporting to Rescue 1 that Defendants were engaged in wrongful actions. In response, Rescue 1 began investigating.

42.    Based on that investigation, and upon information and belief, Defendants Eeg and Gipson began misappropriating Rescue 1's Confidential Trade Secret Information for the benefit of Complete Debt Relief prior to their respective resignations from Rescue 1 and continue to do so as of the filing of this action.

43.    During Rescue 1's investigation into Defendants' actions, several Rescue 1 employees informed Rescue 1 that Defendants' plan was to create a copy-cat business that was an exact copy of Rescue 1's business. *Inter alia*, Rescue 1 was informed that Defendants were going to do the "exact" same thing as Rescue 1 just with a new name--including using all of Rescue 1's Confidential Trade Secret Information to operate.

44.    Rescue 1's investigation also uncovered that Defendants had utilized Rescue 1's Confidential Trade Secret Information to identify and then contact Rescue 1's top performing sales representatives to solicit them to join Complete Debt Relief.

45.    Defendants Eeg and Gipson, in their former roles as managers of Rescue 1, had access to Rescue 1's Confidential Trade Secret Information, including: (1) information about products and services, markets, customers and prospective customers; (2) the personal and

financial information of customers, vendors and suppliers; (3) pricing data; (4) software data; (5) financial and accounting data; (6) personnel and compensation data; (7) data processing and communications; (8) technical data; (9) marketing strategies; (10) research and development of new or improved products and services; (11) know-how regarding the business of Rescue 1, its affiliates and its customers or its respective products and services, including business processes, methods and forms (and negative know-how, which refers to lengthy and expensive research proving which processes did not work); (12) employee training manuals; (13) sales agent scripts; (14) lead policies; (15) employment agreements; (16) commission schedules; (17) call queue management; (18) marketing creatives; (19) Rescue 1 employee contact lists; (20) drafts of digital assets; and (21) information about Rescue 1 employees, including information about their compensation, specialized expertise, key performance metrics, contact information, and other similar highly confidential information. To date, Defendants Eeg and Gipson have not returned any Confidential Trade Secret Information they accessed or received during their employment with Rescue 1 upon the termination of their respective employments.

46.    Defendants Eeg and Gipson, in their former roles as managers of Rescue 1, were also provided with hard copies of documents containing Confidential Trade Secret Information, including training manuals, sales scripts, and forms. Eeg and Gipson did not return any documents – including the hard copies of the Confidential Trade Secret Information – they received during their employment with Rescue 1 upon the termination of their respective employments.

47.    Upon information and belief, Defendants Eeg and Gipson use, and continue to use, Rescue 1's Confidential Trade Secret Information to operate Complete Debt Relief, including Rescue 1's marketing strategies; know-how regarding the business of debt relief services, including business processes, methods and forms; employee training manuals; sales agent scripts; lead policies (and negative know-how); employment agreements; commission schedules; call queue management; marketing creatives; drafts of digital assets; and information about Rescue 1 employees, including information about their compensation,

specialized expertise, key performance metrics, contact information, and other similar highly confidential information.

48.     Upon information and belief, Defendants are utilizing the same lead data analysis procedure as Rescue 1 and same marketing strategies, as developed by Rescue 1.

49.     Complete Debt Relief is not hiding the fact that it is and intends to operate an "exact" copy of Rescue 1. By way of example, Complete Debt Relief's website contains nearly identical copies of content from Rescue's 1's website--down to the order of the creditors and the text "Listed below are just a few that we work with. If your creditor is not listed here, it does not mean that we can't help you. Give us a call today!":



**COMPLAINT**

Compare                    https://completedebtrelief.com/about-us/                    to https://rescueonefinancial.com/proven-results/.

50.    Upon information and belief, Defendants are continuing to pursue the establishment and operation of their competing business using Rescue 1's confidential and proprietary trade secret information, as well as to poach existing employees of Rescue 1 using confidential information concerning Rescue 1's compensation structure for its employees.

## Solicitation of Rescue 1 Employees Via the Use of Rescue 1's Confidential Trade Secret Information

51.    Upon information and belief, Defendants Eeg and Gipson began using Rescue 1's Confidential Trade Secret Information to identify and begin actively soliciting employees of Rescue 1 to work for Complete Debt Relief prior to their respective resignations from Rescue 1 and continue to do so as of the filing of this action.

52.    On the date of his resignation, Defendant Eeg informed sales agents, managers, human resources, and Rescue 1's leadership group that he was departing Rescue 1 to start his own business. As Defendant Eeg was a long-term employee of Rescue 1, Rescue 1 hosted

**COMPLAINT**

a "goodbye" party for Defendant Eeg.  At that time, Rescue 1 believed that Eeg would comply with his legal obligations to Rescue 1, and accordingly, wished Defendant Eeg the best of luck in his new venture.

53.    On or about the week of May 29, 2023 one of Rescue 1's investigations uncovered that Defendants had contacted numerous Rescue 1 top performing sales representatives to solicit them to join Complete Debt Relief.

54.    During the course of its investigation, Rescue 1 spoke with several sales representatives who admitted that Defendant Eeg began those solicitation efforts prior to departing his employment at Rescue 1—going so far as to solicit Rescue 1's employees at the goodbye party that Rescue 1 threw for Eeg—and that he is continuing to solicit Rescue 1's employees through at least June 3, 2023.

55.    During their roles as manager at Rescue 1, Defendants had access to Rescue 1's confidential employee information, which includes cellular telephone numbers for all Rescue 1 employees.  Defendants also had access to Rescue 1's highly confidential methods of assessing sales representatives, including what key performance metrics Rescue 1 utilized to assess its sales representatives, and how each of Rescue 1's sales representatives performed compared to those metrics.  In short, Defendants had access to not only how Rescue 1 measures top performance, but also which employees were top performers.

56.    Upon information and belief, Defendants used Rescue 1's Confidential Trade Secret Information to identify Rescue 1's top performing sales representatives, and then contact those Rescue 1 employees with solicitation offers.

57.    Unfortunately, the threat is not merely theoretical.  On June 2, 2023, multiple Rescue One sales representatives did not report to work as scheduled, and instead called claimed to be "out sick".  This high rate of no-shows was unusual, and upon information and belief and based on statements made by other Rescue 1 employees, those sales representatives were instead visiting Complete Debt Relief's office as part of Defendants' solicitation efforts. On June 5, 2023, three more of Rescue 1's sales top performing sales representatives informed Rescue 1 that Defendants are attempting to solicit them.

58.   Historically, Rescue 1 has experienced a low employee annual turnover rate. However, as a direct result of Defendants Eeg and Gipson's efforts, Rescue 1 estimates that **ten to twelve** of Rescue 1's top performing employees have been targeted by Defendants to join Complete Debt Relief, with additional solicitation efforts to follow.

## FIRST CAUSE OF ACTION

### (Trade Secrets Misappropriation By

### Plaintiff as Against All Defendants in Violation of DTSA)

59.   Plaintiff repeats and realleges the allegations contained in paragraphs 1-58 of this Complaint as though fully set forth herein.

60.   At all times relevant to this Complaint, Rescue 1 owned non-public, confidential information including, but not limited to, the following: (1) information about products and services, markets, customers and prospective customers; (2) the personal and financial information of customers, vendors and suppliers; (3) pricing data; (4) software data; (5) financial and accounting data; (6) personnel and compensation data; (7) data processing and communications; (8) technical data; (9) marketing strategies; (10) research and development of new or improved products and services; (11) know-how regarding the business of Rescue 1, its affiliates and its customers or its respective products and services, including business processes, methods and forms (and negative know-how, which refers to lengthy and expensive research proving which processes did not work); (12) employee training manuals; (13) sales agent scripts; (14) lead policies; (15) employment agreements; (16) commission schedules; (17) call queue management; (18) marketing creatives; (19) Rescue 1 employee contact lists; (20) drafts of digital assets; and (21) information about Rescue 1 employees, including information about their compensation, specialized expertise, key performance metrics, contact information, and other similar highly confidential information. Rescue 1 has invested significant time and expense in developing this Confidential Trade Secret Information. The Confidential Trade Secret Information would be highly valuable to a competitor because, among other reasons, it would allow a competitor

to significantly shorten the sales cycle and provide a greater likelihood of success in obtaining sales.

61.   The Confidential Trade Secret Information is and was a trade secret belonging to Rescue 1 at all relevant times.

62.   At all times relevant to this Complaint, Rescue 1 employed reasonable measures to maintain the secrecy and security of its Confidential Trade Secret Information. Defendants were afforded substantial and ongoing access to Rescue 1's trade secrets in the course of their employment.

63.   Upon information and belief, Defendants, each of them, willfully and maliciously misappropriated and used in an improper manner Rescue 1's Confidential Trade Secret Information in furtherance of their efforts to establish a competing business, by, among other things:

> a.   Improperly taking Rescue 1's Confidential Trade Secret Information prior to and after their resignations from Rescue 1.
>
> b.   Not returning hard copies of Rescue 1's Confidential Trade Secret Information upon their resignations from Rescue 1, including training manuals, sales scripts, and forms.
>
> c.   Otherwise using Rescue 1's Confidential Trade Secret Information for Complete Debt Relief.

64.   Defendants were fully aware that Rescue 1 did not authorize or consent to the use of their trade secrets in furtherance of Rescue 1's competing business venture.

65.   Further, Defendants were unjustly enriched by obtaining business using Confidential Trade Secret Information they improperly acquired.

66.   Defendants' actions constitute a willful and malicious violation of the Defendant Trade Secret Act ("DTSA"), 18 U.S.C. § 1839, *et seq*.

67.   As a result of Defendants' conduct, Rescue 1 has suffered and will continue to suffer damages and irreparable harm, including loss of business and contractual relationships, diminished value of its confidential information, harm to its goodwill and

**COMPLAINT**

reputation, and loss of its employees. Rescue 1 seeks actual, incidental, and compensatory damages, along with its reasonable attorneys' fees and interest. Rescue 1's damages cannot be adequately compensated through remedies at law alone, thereby requiring equitable relief in addition to compensatory relief. Defendants' actions will continue to cause harm to Rescue 1 if not restrained.

68.    In doing the acts alleged in this Complaint, Defendants acted with oppression, fraud, and/or malice, therefore entitling Rescue 1 to punitive damages.

## SECOND CAUSE OF ACTION

### (Breach of Contract by Plaintiff as Against Defendants Eeg and Gipson)

69.    Plaintiff repeats and realleges the allegations contained in paragraphs 1-68 of this Complaint as though fully set forth herein.

70.    At all times relevant to this Complaint, a contract between Defendant Eeg and Rescue 1 that regulated the terms and conditions of Defendant Eeg's employment and conduct, existed ("Employment Agreement"). Defendant Eeg and Rescue 1 entered into the Employment Agreement on or about January 13, 2021. The relevant terms of the Employment Agreement survive Defendant Eeg's employment termination on April 4, 2023. Indeed, per the express terms of the Employment Agreement, the non-solicitation provision survives and remains in full force and effect after the expiration or any termination of the Employment Agreement.

71.    At all times relevant to this Complaint, Rescue 1 fulfilled all material terms of the Employment Agreement with Defendant Eeg.

72.    At all times relevant to this Complaint, a contract between Defendant Gipson and Rescue 1 that regulated the terms and conditions of Defendant Gipson's employment and conduct, existed ("Employment Agreement"). Defendant Gipson and Rescue 1 entered into the Employment Agreement on or about January 14, 2021. The relevant terms of the Employment Agreement survive Defendant Gipson's employment termination on June 5, 2023. Indeed, per the express terms of the Employment Agreement, the non-solicitation

provision survives and remains in full force and effect after the expiration or any termination of the Employment Agreement.

73. At all times relevant to this Complaint, Rescue 1 fulfilled all material terms of the Employment Agreement with Defendant Gipson.

74. Defendants, between each of them, breached the material and express terms of their respective contracts by (a) failing to devote their business time, best efforts and business judgment, skill, and knowledge to the advancement of Rescue 1's business and interests; (b) engaging in outside business activities in furtherance of Rescue 1 without approval or consent of Rescue 1; (c) failing to keep Rescue 1's confidential information in strict confidence; (d) using Rescue 1's confidential information for their benefit or the benefit of Person(s) other than Rescue 1; (e) soliciting or attempting to solicit at least one employee of Rescue 1 to leave the employ of Rescue 1; (f) using confidential or trade secret information (namely, Rescue 1's employee contact directory) to solicit or attempt to solicit clients of Rescue 1 for a competing business; (g) failing to make full disclosure to Rescue 1 before entering into outside activities; and (h) making preparations to form a competing business, and/or acquire an ownership interest in a competing business, without the prior approval of Rescue 1; and (i) exploiting or taking advantage of outside business opportunities learned of through employment with Rescue 1 without first disclosing them to Rescue 1 and obtaining Rescue 1's express written consent to pursue such opportunities.

75. As a result of Defendants' conduct, Rescue 1 has suffered and will continue to suffer damages and irreparable harm, including loss of business and contractual relationships, diminished value of its confidential information, harm to its goodwill and reputation, and loss of its employees. Rescue 1 seeks actual, incidental, and compensatory damages, along with its reasonable attorneys' fees and interest. Rescue 1's damages cannot be adequately compensated through remedies at law alone, thereby requiring equitable relief in addition to compensatory relief. Defendants' actions will continue to cause harm to Rescue 1 if not restrained.

# THIRD CLAIM FOR RELIEF

## (Breach of Implied Covenant of Good Faith
## and Fair Dealing Against Defendants eg and Gipson)

76.    Plaintiff repeats and realleges the allegations contained in paragraphs 1-75 of this Complaint as though fully set forth herein.

77.    At all times relevant to this Complaint, a contract between Defendant Eeg and Rescue 1 that regulated the terms and conditions of Defendant Eeg's employment and conduct, existed ("Employment Agreement"). Defendant Eeg and Rescue 1 entered into the Employment Agreement on or about January 13, 2021. The relevant terms of the Employment Agreement survive Defendant Eeg's employment termination on April 4, 2023. Indeed, per the express terms of the Employment Agreement, the non-solicitation provision survives and remains in full force and effect after the expiration or any termination of the Employment Agreement.

78.    At all times relevant to this Complaint, Rescue 1 fulfilled all material terms of the Employment Agreement with Defendant Eeg.

79.    At all times relevant to this Complaint, a contract between Defendant Gipson and Rescue 1 that regulated the terms and conditions of Defendant Gipson's employment and conduct, existed ("Employment Agreement"). Defendant Gipson and Rescue 1 entered into the Employment Agreement on or about January 14, 2021. The relevant terms of the Employment Agreement survive Defendant Gipson's employment termination on June 5, 2023. Indeed, per the express terms of the Employment Agreement, the non-solicitation provision survives and remains in full force and effect after the expiration or any termination of the Employment Agreement.

80.    At all times relevant to this Complaint, Rescue 1 fulfilled all material terms of the Employment Agreement with Defendant Gipson.

81.    Defendants, between each of them, breached the material and express terms of their respective contracts and prevented Rescue 1 from receiving the benefits under their respective contract by (a) failing to devote their business time, best efforts and business

judgment, skill, and knowledge to the advancement of Rescue 1's business and interests; (b) engaging in outside business activities in furtherance of Rescue 1 without approval or consent of Rescue 1; (c) failing to keep Rescue 1's confidential information in strict confidence; (d) using Rescue 1's confidential information for their benefit or the benefit of Person(s) other than Rescue 1; (e) soliciting or attempting to solicit at least one employee of Rescue 1 to leave the employ of Rescue 1; (f) using confidential or trade secret information (namely, Rescue 1's employee contact directory) to solicit or attempt to solicit clients of Rescue 1 for a competing business; (g) failing to make full disclosure to Rescue 1 before entering into outside activities; and (h) making preparations to form a competing business, and/or acquire an ownership interest in a competing business, without the prior approval of Rescue 1; and (i) exploiting or taking advantage of outside business opportunities learned of through employment with Rescue 1 without first disclosing them to Rescue 1 and obtaining Rescue 1's express written consent to pursue such opportunities.

82.    By engaging in the foregoing actions, Defendants Eeg and Gipson did not act fairly and in good faith.

83.    As a result of Defendants' conduct, Rescue 1 has suffered and will continue to suffer damages and irreparable harm, including loss of business and contractual relationships, diminished value of its confidential information, harm to its goodwill and reputation, and loss of its employees. Rescue 1 seeks actual, incidental, and compensatory damages, along with its reasonable attorneys' fees and interest. Rescue 1's damages cannot be adequately compensated through remedies at law alone, thereby requiring equitable relief in addition to compensatory relief. Defendants' actions will continue to cause harm to Rescue 1 if not restrained.

## FOURTH CAUSE OF ACTION

### (Breach of Duty of Loyalty by Plaintiff as Against Defendants Eeg and Gipson)

84.    Plaintiff repeats and realleges the allegations contained in paragraphs 1-83 of this Complaint as though fully set forth herein.

85.    At all times relevant to this Complaint, Defendant Eeg and Defendant Gipson

were managers of Rescue 1. As managers of Rescue 1, Defendants owed a duty of loyalty to Rescue 1. At all times relevant to this Complaint, Rescue 1 trusted Defendants and expected them to honor their duty of loyalty to Rescue 1 and place the interests of Rescue 1 above their own personal interests.

86.    Defendants, and each of them, knowingly breached their respective duties of loyalty during their employment by (a) failing to devote their full business time, best efforts and business judgment, skill, and knowledge to the advancement of Rescue 1's business and interests; (b) engaging in business activity that were not in furtherance of Rescue 1 without approval or consent of Rescue 1; (c) not giving Rescue 1 their undivided loyalty; (d) not giving preference to the business of Rescue 1 during their employment; (e) not delivering everything they received or acquired during their employment (other than earned compensation and benefits) to Rescue 1; (f) engaging in outside activities that interfere with their ability to perform their duties and responsibilities to Rescue 1 and/or created a conflict of interest with Rescue 1; (g) failing to make full disclosure to Rescue 1 before entering into their outside activities and making preparations to form a competing business, or acquire an ownership interest in a competing business, without the prior approval of Rescue 1; (h) soliciting and raiding Rescue 1's current employees to resign from Rescue 1 to induce them to work at Complete Debt Relief – especially using Rescue 1's confidential employee contact directory.

87.    Rescue 1 did not give consent, let alone informed consent, to Defendants' conduct.

88.    As a result of Defendants' conduct, Rescue 1 has suffered and will continue to suffer damages and irreparable harm, including loss of business and contractual relationships, diminished value of its confidential information, harm to its goodwill and reputation, and loss of its employees. Defendants' misconduct were a substantial factor in causing such harm. Rescue 1 seeks actual, incidental, and compensatory damages, along with interest. Rescue 1's damages cannot be adequately compensated through remedies at law alone, thereby requiring equitable relief in addition to compensatory relief. Defendants'

actions will continue to cause harm to Rescue 1 if not restrained.

89.    Rescue 1 further seeks injunctive relief, enjoining Defendants from (a) using or disclosing the confidential information and trade secrets of Rescue 1; (b) soliciting Rescue 1's employees; (c) engaging in any conduct that violates their respective Employment Agreements; and (d) requires them to immediately return to Rescue 1 all confidential information, trade secrets and property belonging to Rescue 1 in their possession, custody or control.

90.    In doing the acts alleged in this Complaint, Defendants acted with oppression, fraud, and/or malice, therefore entitling Rescue 1 to punitive damages.

## FIFTH CLAIM FOR RELIEF

**(Intentional Interference with Contractual Relations as Against All Defendants)**

91.    Plaintiff repeats and realleges the allegations contained in paragraphs 1-90 of this Complaint as though fully set forth herein.

92.    At all times relevant to this Complaint, each employee of Rescue 1 is required to enter into an Employment Agreement with Rescue 1, the terms of which include terms requiring the employee to maintain the confidentiality of Rescue 1's Confidential Trade Secret Information and prohibits the use or disclosure of the same outside of Rescue 1.

93.    At all times relevant to this Complaint, Defendants were aware of the Employment Agreements entered into between Rescue 1 and each of its employees. Specifically, during their time as managers at Rescue 1, Defendants Eeg and Gipson had knowledge of these agreements and the terms thereof.

94.    Despite their knowledge of the terms, on information and belief, Defendants have intentionally made performance of these terms difficult by inducing Rescue 1's employees into breaching the terms of their Employment Agreements by asking those employees to provide Defendants with Rescue 1's Confidential Trade Secret Information, in exchange for an offer of employment at Complete Debt Relief.

95.    By their actions, Defendants intended to disrupt the performance of numerous of Rescue 1's employees Employment Agreement with Rescue 1.

96.     As a result of Defendants' conduct, Rescue 1 has suffered and will continue to suffer damages and irreparable harm, including loss of business and contractual relationships, diminished value of its confidential information, harm to its goodwill and reputation, and loss of its employees. Rescue 1 seeks actual, incidental, and compensatory damages, along with its reasonable attorneys' fees and interest. Rescue 1's damages cannot be adequately compensated through remedies at law alone, thereby requiring equitable relief in addition to compensatory relief. Defendants' actions will continue to cause harm to Rescue 1 if not restrained.

## SIXTH CLAIM FOR RELIEF

**(Negligent Interference with Contractual Relations as Against All Defendants)**

97.     Plaintiff repeats and realleges the allegations contained in paragraphs 1-96 of this Complaint as though fully set forth herein.

98.     At all times relevant to this Complaint, each employee of Rescue 1 is required to enter into an Employment Agreement with Rescue 1, the terms of which include terms requiring the employee to maintain the confidentiality of Rescue 1's Confidential Trade Secret Information and prohibits the use or disclosure of the same outside of Rescue 1.

99.     At all times relevant to this Complaint, Defendants were aware of the Employment Agreements entered into between Rescue 1 and each of its employees. Specifically, during their time as managers at Rescue 1, Defendants Eeg and Gipson had knowledge of these agreements and the terms thereof.

100.    Despite their knowledge of the terms, on information and belief, Defendants have made performance of these terms difficult by inducing Rescue 1's employees into breaching the terms of their Employment Agreements by asking those employees to provide Defendants with Rescue 1's Confidential Trade Secret Information, in exchange for an offer of employment at Complete Debt Relief.

101.    Defendants knew, or should have known, that disruption of the performance of numerous Rescue 1's employees' Employment Agreement was certain or substantially certain to occur by their wrongful actions.

102.   As a result of Defendants' conduct, Rescue 1 has suffered and will continue to suffer damages and irreparable harm, including loss of business and contractual relationships, diminished value of its confidential information, harm to its goodwill and reputation, and loss of its employees. Rescue 1 seeks actual, incidental, and compensatory damages, along with its reasonable attorneys' fees and interest. Rescue 1's damages cannot be adequately compensated through remedies at law alone, thereby requiring equitable relief in addition to compensatory relief. Defendants' actions will continue to cause harm to Rescue 1 if not restrained.

## SEVENTH CLAIM FOR RELIEF

### (Intentional Interference with Prospective Economic Advantage as Against All Defendants)

103.   Plaintiff repeats and realleges the allegations contained in paragraphs 1-102 of this Complaint as though fully set forth herein.

104.   Rescue 1 has an economic relationship with each of its employees, the terms of which relationship is set forth in their respective Employment Agreements, wherein that economic relationship results in an economic benefit to Rescue 1.

105.   At all times relevant to this Complaint, Defendants were aware of the Employment Agreements entered into between Rescue 1 and each of its employees. Specifically, during their time as managers at Rescue 1, Defendants Eeg and Gipson had knowledge of these agreements and the terms thereof, and thus were aware of the economic relationship.

106.   Despite their knowledge of the terms, on information and belief, Defendants have intentionally induced Rescue 1's employees into breaching the terms of their Employment Agreements by asking those employees to provide Defendants with Rescue 1's Confidential Trade Secret Information, in exchange for an offer of employment at Complete Debt Relief.

107.   By their actions, Defendants intended to disrupt the relationship between Rescue 1 and its employees and and/or knew that disruption was certain or substantially

certain to occur by their wrongful actions.

108.    Rescue 1's relationships with its employees have been disrupted.

109.    As a result of Defendants' conduct, Rescue 1 has suffered and will continue to suffer damages and irreparable harm, including loss of business and contractual relationships, diminished value of its confidential information, harm to its goodwill and reputation, and loss of its employees. Rescue 1 seeks actual, incidental, and compensatory damages, along with its reasonable attorneys' fees and interest. Rescue 1's damages cannot be adequately compensated through remedies at law alone, thereby requiring equitable relief in addition to compensatory relief. Defendants' actions will continue to cause harm to Rescue 1 if not restrained.

## EIGHTH CLAIM FOR RELIEF

### (Negligent Interference with Prospective Economic Advantage as Against All Defendants)

110.    Plaintiff repeats and realleges the allegations contained in paragraphs 1-109 of this Complaint as though fully set forth herein.

111.    Rescue 1 is an economic relationship with each of its employees, the terms of which relationship is set forth in their respective Employment Agreements, wherein that economic relationship results in an economic benefit to Rescue 1.

112.    At all times relevant to this Complaint, Defendants were aware of the Employment Agreements entered into between Rescue 1 and each of its employees. Specifically, during their time as managers at Rescue 1, Defendants Eeg and Gipson had knowledge of these agreements and the terms thereof, and thus were aware of the economic relationship.

113.    Despite their knowledge of the terms, on information and belief, Defendants have induced Rescue 1's employees into breaching the terms of their Employment Agreements by asking those employees to provide Defendants with Rescue 1's Confidential Trade Secret Information, in exchange for an offer of employment at Complete Debt Relief.

114.    Defendants knew, or should have known, that disruption of the relationship

between Rescue 1 and its employees was certain or substantially certain to occur by its wrongful actions.

115.   As a result of Defendants' conduct, Rescue 1 has suffered and will continue to suffer damages and irreparable harm, including loss of business and contractual relationships, diminished value of its confidential information, harm to its goodwill and reputation, and loss of its employees. Rescue 1 seeks actual, incidental, and compensatory damages, along with its reasonable attorneys' fees and interest. Rescue 1's damages cannot be adequately compensated through remedies at law alone, thereby requiring equitable relief in addition to compensatory relief. Defendants' actions will continue to cause harm to Rescue 1 if not restrained.

## NINTH CLAIM FOR RELIEF

### (Unjust Enrichment By Plaintiff as Against All Defendants)

116.   Plaintiff repeats and realleges the allegations contained in paragraphs 1-115 of this Complaint as though fully set forth herein.

117.   By engaging in the conduct set forth above, including, but not limited to (1) soliciting employees of Rescue 1 to work at Complete Debt Relief, while still purporting to work at Rescue 1; (2) breaching their respective contracts with Rescue 1; (3) beaching their respective duty of loyalty owed to Rescue 1; and (4) misappropriating Rescue 1's Confidential Trade Secret Information, including using Rescue 1's marketing strategies; know-how regarding the business of debt relief services, including business processes, methods and forms; employee training manuals; sales agent scripts; lead policies (and negative know-how); employment agreements; commission schedules; call queue management; marketing creatives; drafts of digital assets; and information about Rescue 1 employees, including information about their compensation, specialized expertise, key performance metrics, contact information, and other similar highly confidential information, Defendants have unjustly enriched themselves by both lowering their costs to operate and increasing their sales rate.  Defendants would not have gained these economic advantages if not for their improper behavior.

118.    As a result of Defendants' unlawful, fraudulent, and unfair conduct, Defendants received a benefit to the detriment and expense of Rescue 1 who will lose profits due to Defendants' tortious conduct.

119.    Under the circumstances alleged in this complaint, it would be unfair and inequitable for Defendants to retain the profits they have unjustly obtained.  As a result, Defendants should relinquish the monetary benefit they received through their improper actions as set forth above to Rescue 1.

120.    Defendants acted with malice, oppression and/or fraud warranting the imposition of punitive damages.

## TENTH CLAIM FOR RELIEF

### (Unfair Business Practices By Plaintiff as Against All Defendants)

121.    Plaintiff repeats and realleges the allegations contained in paragraphs 1-120 of this Complaint as though fully set forth herein.

122.    At all times relevant to this Complaint, Defendants have engaged and continue to engage in unfair and/or unlawful business practices in California in violation of California Business and Professions Code § 17200 *et seq*., by, among other things, the following acts:

      a.    Defendants, specifically Eeg and Gipson, solicited employees of Rescue 1 to work at Complete Debt Relief, while still purporting to work at Rescue 1.

      b.    Breaching their respective contracts with Rescue 1.

      c.    Breaching their respective duty of loyalty owed to Rescue 1.

      d.    By misappropriating Rescue 1's Confidential Trade Secret Information, including using Rescue 1's marketing strategies; know-how regarding the business of debt relief services, including business processes, methods and forms; employee training manuals; sales agent scripts; lead policies (and negative know-how); employment agreements; commission schedules; call queue management; marketing creatives; drafts of digital assets; and information about Rescue 1 employees,

**COMPLAINT**

including information about their compensation, specialized expertise, key performance metrics, contact information, and other similar highly confidential information.

123.   Defendants' utilization of these unfair and/or unlawful business practices harmed Rescue 1 and continue to harm Rescue 1 by providing Defendants an unfair advantage over Rescue 1, who has been engaging in business practices in honest compliance with applicable state and federal laws concerning confidential and trade secret information.

124.   As a result of Defendants' unfair, unlawful, and fraudulent business practices, Plaintiff is entitled to restitution at an amount to be proven at trial.

125.   Rescue 1 was compelled to retain the services of counsel to file this court action to protect its interests, to obtain restitution and injunctive relief, and to enforce important rights affecting the public interest. Rescue 1 has thereby incurred the financial burden of attorneys' fees and costs, which it is entitled to recover under California law. As a result of Defendants' unfair, unlawful, and fraudulent business practices, Plaintiff is entitled to injunctive relief to prohibit Defendant from continuing to act in this manner.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against Defendants, and each of them, and an order granting the following relief:

1.   Immediate and permanent injunction barring Defendants from (a) using or disclosing Rescue 1's Confidential Trade Secret Information; (b) soliciting Rescue 1's employees; (c) engaging in any conduct that violates their respective Employment Agreements; (d) requires them to immediately return to Rescue 1 all confidential information, trade secrets and property belonging to Rescue 1 in their possession, custody or control;

2.   Expedited discovery that requires production for inspection production by Defendants to Plaintiff:

   a.   All documents and things in any form, including electronic computers files and/or e-mails, obtained from Plaintiff and/or that contain,

**COMPLAINT**

constitute, refer to, reflect, concern, or were derived from any nonpublic documents or information obtained from Plaintiff;

    b.    All documents and things in any form that concern or involve Plaintiff's employees or that concern or are based on any nonpublic documents or information obtained from Plaintiff; and

    c.    All communication between any of Defendants and Plaintiff's employees, including e-mails and/or text messages.

3.    Restitution of all amounts Defendants improperly obtained.

4.    Damages in an amount to be determined at trial, including but not limited to pre- and post-judgment interest.

5.    Costs, disbursements, punitive damages, reasonable attorneys' fees; and

6.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable.

**MICHELMAN & ROBINSON, LLP**

Date: June 6, 2023        By: */s/ Jennifer A. Mauri*
                        Mona Z. Hanna
                        Jennifer A. Mauri
                        Allison C. Aguirre
                        Attorneys for Plaintiff
                        RESCUE 1 FINANCIAL, LLC

**COMPLAINT**